## JAMES CARBREY *vs.* NATHANIEL WILLIS.

While two adjoining estates are both owned by the same person, no easement can be created in one of them by the use of a drain through it for the benefit of the other; and after the ownership is severed, the continuance of the drain, if its use is not open or visible or known to the owner of the estate through which it passes, has no tendency to prove the acquisition of an easement by adverse enjoyment.

A grantor of land with full covenants of warranty, and his privies, are estopped to claim any interest in the granted premises.

If the owner of two adjoining estates, through one of which a drain exists for the benefit of the other, conveys the lower estate with full covenants of warranty, no easement is reserved by implication, unless it is *de facto* annexed to the estate which the grantor retains, and is necessary to the enjoyment thereof, and is in use at the time of the grant. And this necessity cannot be deemed to exist, if a similar privilege can be secured by reasonable trouble and expense.

If, by the true construction of a deed, a grant of land extends beyond the eaves and to the walls of a house owned by the grantor, and the water is allowed for more than twenty years thereafter to fall upon the granted land from the eaves of the house, it should be submitted as a question of fact for the jury to determine whether the owner of the house thereby acquires a title by adverse enjoyment, or an easement, or no right at all, in the land under the eaves.

CONTRACT to recover damages for the breach of the covenants of warranty and against incumbrances in a deed of land on Atkinson Street, in Boston, bounded in part as follows: " Southerly on land now or late of Benjamin Gould, there measuring sixteen feet and six inches; westerly again on the same, there measuring sixteen feet; and southerly on land now or late of the heirs of Cowell, there measuring forty-eight feet, more or less, to said Atkinson Street, or however otherwise bounded or described." The declaration alleged that the premises conveyed were subject to a right of drainage across the same, and also to the right to have the eaves on the estate on the southerly side thereof overhang said land, and the water drip therefrom.

At the trial in the superior court, before *Ames,* J., the execution of the deed by the defendant, which was dated May 1, 1848, was admitted. It appeared in evidence that in 1812, and for many years before that time, the granted premises, and also an estate on High Street, in favor of which the alleged right of drainage was claimed, belonged to George Blanchard; and that in 1812 Blanchard conveyed to Rebecca Richardson the estate described in said deed, by a deed of mortgage in the common form, with general covenants of warranty and freedom from incumbrances, to secure the payment of $5000 in two years with interest. The title under this mortgage and also the equity of redemption, which was taken on execution, became vested in the defendant as early as 1821. The title to the estate on High Street passed from Blanchard in 1815, and is now held by devisees of William Phillips, who acquired the title thereto in 1823.

The plaintiff introduced evidence tending to show that there was no trouble with the drain from the estate on High Street until 1857, when it became choked up, and flooded the cellar of the house from which it led, and a mason was employed to make examinations, and it was found that it passed through the plaintiff's land; and that the house upon the estate on High Street was an old house prior to the year 1812. The plaintiff testified that he had no knowledge of the existence of the drain until it was opened by the mason. There was no evidence

when or under what circumstances the drain was originally constructed, except that the mason testified that it appeared as if it was built when the house drained by it was built. There was some conflict of testimony as to the practicability of draining from the cellar of the High Street estate into the High Street sewer.

It also appeared that the building, the eaves of which were alleged to overhang the plaintiff's land, was an ancient building; and a witness sixty-six years old testified that he thought no change in the form of the roof had been made since he was a boy.

" The judge ruled that, there being no evidence as to the precise time when the drain was constructed, and it being assumed that it was an ancient one, the burden was upon the plaintiff to show that the owners of the High Street estate had acquired a right to use it, and that, so long as both estates were owned in the same right by the same person, the use of the drain had nothing of the nature or character of an easement; that, after the ownership was severed and the two estates had passed into different hands, the fact that the High Street estate continued to be drained across the plaintiff's estate, without any evidence that the plaintiff or those under whom he claims had any knowledge or notice whatsoever of the fact, would not amount to such an adverse use or such a claim of right as by mere use and lapse of time to create a right of easement, and that such use, not being open and notorious, would not establish the right, unless shown expressly to have come to the knowledge of the owners of the plaintiff's estate.

" The judge also ruled that, although a drain attached to and used by the High Street estate would generally be held to be appurtenant thereto and to pass by any deed or conveyance thereof, independently of any prescriptive title or right acquired by adverse use, yet under the circumstances of this case, the drain being assumed by both parties to have been in use previously to the year 1812, and the owner at that time, Blanchard, having conveyed by mortgage the alleged servient estate to Richardson, with general covenants of warranty and freedom from incumbrances, the defendant, under the title deeds put in

by him, making his title in part under the conveyance to said Richardson, held his estate in 1821 and afterwards relieved of this incumbrance ; and that the owners of the High Street estate, claiming under said Blanchard, are estopped and barred, by the previous deed from said Blanchard of the other estate, from claiming the drain in controversy as appurtenant to their estate.

" The judge also ruled that the projection of the eaves of the adjoining house was an adverse occupation of the land under said eaves, and had been so long continued without interruption as to mature into a right, so that the land under said eaves did not pass by the defendant's deed to the plaintiff; and that the plaintiff's remedy for this defect in his title, if any defect there be, is not under the covenant against incumbrances."

A verdict was rendered for the defendant, by the direction of the judge, and the facts and evidence were reported for the revision of this court.

*D. Thaxter & F. Bartlett*, for the plaintiff. It would seem to be well settled that whatever is necessary to the fair enjoyment of the thing granted or excepted is incidentally granted or excepted; and that where, upon the severance of an estate, it appears that an easement which is then in use is reasonably necessary to the enjoyment of the part granted or reserved, the law will imply a grant or reservation in favor of the dominant estate, provided the easement be one which is apparent and continuous. *Pyer* v. *Carter*, 1 Hurlst. & Norm. 916. *Ewart* v. *Cochrane*, 7 Jur. (N. S.) 925. *Hall* v. *Lund*, Law Journ. Rep. May 1863, p. 113. *Richards* v. *Rose*, 9 Exch. 218. *Pinnington* v. *Galland*, 9 Exch. 1. *Nicholas* v. *Chamberlain*, Cro. Jac. 121. *Seibert* v. *Levan*, 8 Barr, 383. *Dunklee* v. *Wilton Railroad*, 4 Fost. (N. H.) 489. Gale on Easements, (3d ed.) 81–109. Washburn on Easements, 523–531. The ruling in regard to the projection of the eaves was erroneous.

*C. M. Ellis & E. Pearson*, for the defendant.

Hoar, J. 1. The first ruling made by the judge who presided at the trial was entirely correct. While both estates were owned by Blanchard, no easement could be created by any use

of the drain for the benefit of one of them. And after the ownership was severed, the continuance of the drain would have no tendency to prove the acquisition of an easement by adverse enjoyment, because the use was not open or visible, or known to the owners of the estate upon which it would be imposed.

In the next place, it is clear that the conveyance by the mortgage to Rebecca Richardson in 1812, with full covenants of warranty, would estop the grantor and those claiming under a title subsequently derived from him, from claiming any interest in the mortgaged premises. When the mortgage was foreclosed or merged in the equity of redemption, the title of the mortgagee became absolute and indefeasible to all the premises included in the mortgage deed at the time of its execution.

The only question, then, which arises on this part of the case is, whether anything was excepted from the grant to Richardson, as forming a part of the High Street estate which was retained by the grantor. The whole doctrine on this subject was reviewed and carefully stated in the case of *Johnson* v. *Jordan*, 2 Met. 234. The court in that case intimate the opinion " that if a man, owning two tenements, has built a house on one, and annexed thereto a drain passing through the other, if he sell and convey the house with the appurtenances, such a drain may be construed to be *de facto* annexed as an appurtenance, and pass with it ; and because such construction would be most beneficial to the grantee ; whereas, if he were to sell and convey the lower tenement, still owning the upper, it might reasonably be considered that as the right of drainage was not reserved in terms, when it naturally would be if so intended, it could not be claimed by the grantor. The grantee of the lower tenement, taking the language of the deed most strongly in his own favor and against the grantor, might reasonably claim to hold his granted estate free of the incumbrance." The grants were in that case simultaneous. But where, as in the case at bar, the grant of the lower estate precedes that of the other, we think the true rule of construction is this : that no easement can be taken as reserved by implication, unless it is *de facto* annexed

and in use at the time of the grant, and is necessary to the enjoyment of the estate which the grantor retains. And this necessity cannot be deemed to exist, if a similar privilege can be secured by reasonable trouble and expense.

The rule in respect to easements which pass by implication has been held with some strictness in this commonwealth, even in the case where a grantee claims them as against his grantor, or where the question arises between grantees under conveyances made at the same time, or in cases of partition. Thus in *Grant* v. *Chase*, 17 Mass. 443, it was said that easements which are not named would not pass by a grant, " unless they were either parcel of the premises that were ·expressly conveyed, or necessarily annexed and appendant to them." In *Nichols* v. *Luce*, 24 Pick. 102, it was held that " convenience, even great convenience, is not sufficient " to make a right of way pass as appurtenant. To the same effect is *Gayetty* v. *Bethune*, 14 Mass. 49 ; and a similar conclusion is reached upon full discussion, by Mr. Justice Fletcher, in *Thayer* v. *Payne*, 2 Cush. 327.

In some recent cases in England a different doctrine seems to have prevailed ; and even in the case of a grant of a part of an estate, an easement has been held to be reserved to the grantor as parcel of the remainder, without an express reservation, if it were *de facto* used in connection with it at the time of the grant, and were necessary to its enjoyment in the condition in which the estate then was. *Pyer* v. *Carter*, 1 Hurlst. & Norm. 916. *Ewart* v. *Cochrane*, 7 Jur. (N. S.) 925. *Hall* v. *Lund*, Law Journ. Rep. May 1863, p. 113. In *Pyer* v. *Carter* it was held that it would make no difference in the application of the principle, if a new drain could be constructed on the plaintiff's own land at a trifling expense. The terms' of the deed are not given in the report of the case, and the decision may perhaps be supported on the ground that the conveyance was of part of a house, having obvious existing relations to and dependencies upon the other part of the building. Thus it is a familiar principle that in a grant of a messuage, a farm, a manor, or a mill, many things will pass which have been used with the principal thing, as parcel of the granted premises, which

would not pass under the grant of a piece of land by metes and bounds. In such cases it is only a question of the construction of terms of description.

But where there is a grant of land by metes and bounds, without express reservation, and with full covenants of warranty against incumbrances, we think there is no just reason for holding that there can be any reservation by implication, unless the easement is strictly one of necessity. Where the easement is only one of existing use and great convenience, but for which a substitute can be furnished by reasonable labor and expense, the grantor may certainly cut himself off from it by his deed, if such is the intention of the parties. And it is difficult to see how such an intention could be more clearly and distinctly intimated than by such a deed and warranty.

The presiding judge ruled, as a matter of law, that no right of drainage was reserved under the deed to Richardson in 1812, and we have some doubt whether the evidence reported would have supported a verdict to the contrary. But as the case must go to a new trial upon another ground, and there was some evidence of the necessity of the drain, and the nature and extent of the necessity do not appear to have been distinctly presented as a subject of ruling by the court, it will be proper that it should be submitted to the jury under suitable instructions upon this point.

2. The judge who presided at the trial also ruled, as a matter of law, that the projection of the eaves of the ancient house over the land claimed by the plaintiff under his deed from the defendant, having continued over twenty years, was an adverse occupation of the land under the eaves, which had matured into a right; so that the land under the eaves did not pass by the defendant's deed to the plaintiff. We cannot find in the facts reported enough to establish the correctness of this ruling, and are of opinion that the question should have been submitted to the jury. It does not clearly appear whether the mortgage to Rebecca Richardson in 1812, or the levy on the equity of redemption, included the land up to the wall of the house, or only to the edge of the eaves. Unless this was agreed by the parties,

t should appear by what construction or terms of the mortgage it was held to include or exclude the strip covered by the projection, or the jury should pass upon it. It was apparently assumed as the foundation of the ruling. But if the description bounded the land mortgaged upon the house as a monument, this would only convey the land to the edge of the eaves. *Millett* v. *Fowle*, 8 Cush. 150.

But assuming that the mortgage and levy included the eaves in the boundaries given, it would be a question of fact, as in any other case of disseisin, whether the continuance afterward of the projection of the eaves was of a nature to show an adverse claim to the land, or only the use of an easement. If the grantee of the land under the eaves made any open, visible use of it, this would prevent the acquisition of an adverse title to the land itself. And the circumstances might be such as to show that the mere permissive continuance of a building standing at the time of the grant, and a part of which, the eaves, was conveyed by the grant, would not be conclusive even upon the gaining of an easement.

Upon this point, therefore, the verdict must be set aside, and a new trial granted.