RUTLAND COUNTY, JANUARY TERM, 1885.

[Continued from page 1, *ante.*]

JAMES H. WISWELL *v.* JOHN MINOGUE & OTHERS.

[In Chancery.]

*Way, Right of, by Necessity, implied from Grant or Reservation.*

While a right of way is never *created* by mere necessity, the necessity is evidence to establish the implied grant or reservation of such right; thus the orator's grantor conveyed twenty-six acres of land to the defendants' father, they succeeding to his title, and reserved one acre "containing a slate quarry, as now partially opened for the purpose of quarrying slate," with the privilege of repurchasing, for a designated price, as much additional land "as is needful for quarrying purposes." Subsequently, under this reserved right, the grantee conveyed to the orator's predecessor 3 55-100 acres, "to be used for quarrying purposes only," with a stipulation in the deed that the grantee should "keep up the fences, gates, and bars, whenever he shall find it necessary to open the same in passing to or from" the quarry. At the time of the conveyances, and ever since, there was a farm road leading from the quarry through the twenty-six acres, to a highway, across which road was a gate or bars; and which road was the only means of egress except over the lands of others, and that, only by permission. A bill in equity having been brought, praying that the defendants be restrained from interfering with the orator in his use of the way, and from commencing suits, &c.; *Held*, (1) that there was an implied reservation of right of way; (2) that the orator was under no obligation to purchase the right; (3) that the deed reconveying the 3 55-100 acres clearly recognized the right.

BILL IN CHANCERY. Heard on bill, answer, replication, and master's report. September Term, 1884. VEAZEY, Chancellor, "decreed that the orator was only entitled to a passage way to and from the slate quarry, over and through the defendants' premises to the highway on the west, by paying fair compensation therefor, as and at the rate stipulated in the deed of Morse to Minogue.

"On the hearing, the defendants conceded that the orator was entitled to such way by paying therefor. It is, there-

fore, further ordered that a special master be appointed to find and report what would be a fair compensation for a suitable way through the defendants' premises to said quarry and to locate the same. Further orders are withheld until the coming in of such report."

The prayer of the bill was, that the defendants, their agents, &c., be restrained from molesting, hindering, and interfering with the orator, his agents, &c., in their passage to and from the orator's premises along and over said way across the lands of the defendants, and from bringing suits at law for so doing. The master found in part :

"On the 5th day of December, 1857, one Harris Morse, being the owner in fee of a certain farm in Poultney, conveyed it by warranty deed to one Patrick Minogue, then living, but since deceased, and the father of these defendants, who succeeded to his rights at his decease in said farm.

"In said deed was this clause: 'Excepting I reserve to myself, my heirs, executors, and administrators, one acre of land containing the slate quarry, as now partially opened for the purpose of quarrying slate; also the privilege of purchasing so much land as is needful for quarrying purposes, at the rate of $200 per acre for land west of the fence, and at the rate of $50 per acre for land east of the fence running north and south, west of said quarry.'

"On the 2d day of November, 1865, said Morse conveyed, by deed, to one Lloyd, the premises, rights and privileges reserved in said deed to Minogue.

"On the 26th day of March, 1866, Minogue conveyed, by deed, to said Lloyd, for valuable consideration, $3\frac{55}{100}$ acres of land adjoining the premises so reserved and conveyed to Lloyd, the same being a part of the farm conveyed, as aforesaid, by Morse to Minogue. This purchase was made by Lloyd under the privileges conveyed to him by Morse, as aforesaid. The description in the deed of Minogue to Lloyd is as follows :" * * * * 'containing $4\frac{55}{100}$ acres, including one undescribed acre, reserved by Harris Morse in his deed to Patrick Minogue, December 5th, 1857, and said acre being conveyed to E. E. Lloyd, November, 1865, by said Harris Morse, is not included in this conveyance; and it is

hereby understood and agreed that the above described premises are to be used for quarrying purposes only; and the said Lloyd hereby agrees to keep up the fences, gates, and bars, whenever he shall find it necessary to open the same in passing to or from the above described premises.'

"The title of said $4\frac{55}{100}$ acres has passed to and is now in the orator, James H. Wiswell, together with what is legally appurtenant thereto under said deed.

"This Minogue farm consists of twenty-six acres, and is located on the easterly side of the highway leading from Hydeville to Poultney. Said slate quarry is located nearly midway of the farm east and west; and said quarry opening was before Minogue sold said $3\frac{55}{100}$ acres and still is about ten rods from the north line of the farm, but the whole quarry piece, now consisting of $4\frac{55}{100}$ acres, extends to the north line. The house and farm buildings stand on said highway near the southwest corner of the farm. When Minogue bought, there was, and ever since has been, a farm road used for farm purposes, leading from the buildings back through the meadow and tillage land into and through the pasture to said quarry, and to the wood lot in the pasture.

"Said quarry piece has not been fenced, but there has been during said period, and is, a fence some rods from the quarry, between the pasture and meadow, with a gate or bars in said road-way, and another fence at the highway where this farm road comes out. This farm road was not worked or fenced, but was an ordinary path for the teaming across the farm through the meadow and to the wood lot, no others than the owners of said farm having any right or occasion to use it, except the owners of said quarry, and their right is the question involved in this case.

"To the east of this farm, but not abutting on it, is another highway leading from Castleton to Poultney, and parallel to the said Hydeville and Poultney road. Between said Castleton and Poultney road and said quarry and Minogue farm, there are and always have been different land owners; but there is a road-way across said lands from said highway to the north line of said Minogue farm, near the quarry." * * * *

"Before Minogue sold the additional $3\frac{55}{100}$ acres, there was no way of getting to the original *one acre* piece without passing over his land. That was landlocked by his land.

After he sold, then the quarry lot was extended to his north line, and it was accessible through the lands of other parties without passing over his land." * * * *

"Said Lloyd worked the quarry nearly two years, 1867 and 1868, and drew slate out both ways, by permission. He then leased to Roberts and others, who worked it about two years, until 1870—and it was not again worked until the orator worked it after he bought, in 1882. Roberts owned the land north of the quarry lot and drew his slate out that way."

*Bromley & Clark*, for the orators.

A way of necessity was reserved in the deed of Morse to Minogue of the quarry lot. 3 Kent Com. 420; 7 Allen, 364; Wash. Ease. (2d ed.) 40, 208; *Tracy* v. *Atherton*, 35 Vt. 52. A right of way was also granted by the express terms of the deed of March 26, 1866, from Minogue to Lloyd.

*Beaman & Platt* and *Lawrence & Meldon*, for the defendants.

There is no foundation for the theory that one man's necessity gives him any right to take another man's property. A way of necessity results from a grant or reservation, express or implied. *Tracy* v. *Atherton*, 35 Vt. 52.

If a contract is made in such manner and under such circumstances as to preclude the implication that a right of way was to be had, most clearly no right of way would be acquired.

Such most certainly was this case so far as there being any intention of the parties that a right of way, strictly as such, west from the quarry, was in contemplation.

But under the right of purchase of the land, and at such a price as was agreed upon, the orator's only claim exists for acquiring the land to be used in that way. 6 M. & W. 173.

The opinion of the court was delivered by

ROYCE, Ch. J. In 1857, as the master finds and reports,

one Harris Morse conveyed to Patrick Minogue, the father of the defendants, to whose title and rights they have succeeded, twenty-six acres of land in Poultney, reserving one acre "containing the slate quarry, as now partially opened for the purpose of quarrying slate," and the privilege of purchasing, at a price designated in the deed, so much additional land "as is needful for quarrying purposes." Under this reserved right, in 1866 Minogue sold and conveyed to the orator's predecessor in title $3\frac{55}{100}$ acres additional to said original quarry acre, "to be used for quarrying purposes only," and it being stipulated in that deed that the grantee shall "keep up the fences, gates, and bars whenever he shall find it necessary to open the same in passing to or from " the quarry.

At the time of both said conveyances there was, and ever since has been, a farm road leading from the quarry through the farm and to the highway called the Hydeville and Poultney road, across which farm road there has been, during all said period, and is, a gate or bars. There was, at the time of the original deed to Minogue and has been since, no means of egress from the quarry other than said farm road, unless over the lands and by the permission of other owners. The orator claims a right of way to and from said quarry, for quarrying purposes, over said farm road.

The principle was adopted in this State in *Tracy* v. *Atherton*, 35 Vt. 52, that there is no such thing as a right of way *created* by mere necessity. Such a right must always have its origin in a grant or reservation, express or implied. When no express words are used, the condition of affairs at the time of the conveyance is to be examined, and the necessity is evidence to establish the *implied* grant or reservation. The correctness of this principle seems to be established at this day by undisputed authority. Goddard's Law of Easements (Bennett's Ed.) 263. And although some attempt was made by the English Courts

to establish a distinction between implied *grants* and implied *reservations* of such easements, on the ground that to recognize the latter would be to allow the grantor to derogate from his grant, it is now universally recognized, that, from the necessity of a right of way to the reasonable use and enjoyment of land granted or reserved, is to be found an implied grant or reservation of such right, in the absence of some express negation thereof in the deed. Goddard's Law of Easements, 267, 269.

At the time of the original conveyance to Patrick Minogue, the farm road was an open and apparent way, furnishing a means of egress from the quarry to the highway; and there was no other means of egress save by passing over the lands of others. This situation has not practically changed since. The orator has no means of getting out from his quarry lot, except by this farm road, without passing over the lands of third persons; which the report finds he has no right to do, unless by permission of the owners.

This comes clearly within the strict definition of "necessity" as laid down by the authorities; and it is not necessary to consider the somewhat enlarged construction of the word which obtains in many cases. Goddard's Law of Easements, 266 *et seq.*

The claim of the defendants that the orator must purchase a right of way, if he desires one, under the reservation in the original deed is not tenable. The language used in that reservation is not apt to convey any such meaning; and as the way must be conclusively presumed to have been impliedly reserved, being a way of necessity, there is no occasion to enlarge the meaning of the words used or give them any other application than that which is so plain, and which has been acted on by both parties in the purchase and sale of the $3\frac{55}{100}$ acres addition to the original quarry acre.

We think, further, that the language used in the deed

of March 26, 1866, from Minogue to Lloyd, with relation
to the keeping up of the fences, gates, and bars, which
could have had no application except to the way in
question, is a clear recognition of the right to use that
way, for quarrying purposes, as appurtenant to the prem-
ises and rights reserved by the deed of 1857.

The decree of the Court of Chancery is reversed, and
cause remanded with mandate that a decree be entered
that the orator is entitled to the right of way first de-
scribed in the master's report, for the purposes and uses
set forth in his bill.