P. F. HOWLEY v. GEORGE T. CHAFFEE ET AL.

November Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed January 23, 1915.

*Easements—"Way of Necessity"—"Visible Easements"—
"Quasi Easements"—Implied Grant—Implied Reservation.*

If I convey to you land to which you can have access only by passing over other land of mine, a "way of necessity" over this land passes to you by the grant; and, if I convey land to you, leaving other land of mine to which I can have access only by passing over the land conveyed to you, a "way of necessity" is reserved in the grant.

Ways of necessity must be distinguished from those founded on a different, though somewhat related ground, variously called the doctrine of "visible servitudes", "easements arising from severance with apparent benefit existing", or "quasi easements".

The doctrine of "ways of necessity" is founded on public policy, in order that no land be left inaccessible for the purposes of cultivation; but in the doctrine of implied reservation of "visible servitudes" no question of public policy is involved, so there is a clear distinction between an implied grant of an easement and an implied reservation of a "visible servitude".

Where a deed containing full covenants of warranty conveys land by metes and bounds and makes no express reservation, there can be no easement reserved by implication, unless the claimed easement is one of strict necessity to the use and enjoyment of the adjoining land still owned by the grantor, the fact that the claimed easement is merely "reasonably necessary for the full, convenient, and comfortable use and enjoyment" of such adjoining land not being sufficient.

APPEAL IN CHANCERY, Rutland County, *Fish*, Chancellor. Heard at Chambers, February 13, 1914, on the pleadings and finding of facts by the Chancellor. Decree for the orator, according to the prayer of the bill with costs against defendant Chaffee alone, who appealed. The opinion fully states the case.

The following is a plan of the property described in the opinion:

*J. C. Jones and Charles L. Howe* for the orator.

*F. S. Platt, W. B. C. Stickney,* and *T. W. Moloney* for the defendants.

It is well settled that a way of necessity never exists where a man can get to his own property through his own land, however inconvenient the way through his own land may be. Mere inconvenience, however great, is not sufficient. It is necessity and not convenience that gives the right. *Dee* v. *King,* 73 Vt. 375; *Hyde* v. *Jamaica,* 27 Vt. 449; *Harwood* v. *Fenton,* 32 Vt. 724; *Godfrey* v. *Goodall,* 53 Vt. 219; *Wiley* v. *Thwyng,* 68 Vt. 128 · *Wiswell* v. *Minogue,* 57 Vt. 620; *Plimpton* v *Converse,* 42 Vt 716; *Stuyvesant* v. *Woodruff,* 47 Am. Dec. 156; *Carberry* v. *Willis,* 89 Mass. 370; *Dolliff* v. *R. R. Co.,* 68 Me. 173; *Stevens* v. *Orr,* 69 Me. 323; *Stillwell* v. *Foster,* 80 Me. 333; *Allen* v. *Kincaid,* 11 Me. 155; *Seeley* v. *Bishop,* 19 Conn. 128; *Abbott* v. *Stewartstonn,* 47 N. H. 23; *Ogden* v. *Jennings,* 62 N. Y. 527; *Root* v. *Wadhams,* 107 N. Y. 385; *Nichols* v. *Luce,* 41 Mass. 102; *Batchelder* v. *National State Bank,* 22 Atl. 592; *Bonelli Bros.* v. *Blackmore,* 14 Am. St. Rep. 554.

POWERS, C. J.   George Richardson in his lifetime, owned a large parcel of land on the south side of Center Street in the city of Rutland. He also owned a 12-foot right of way to the east end of this land from Wales Street which crosses Center Street east of this property.

On May 23, 1883, Richardson conveyed a part of this land to one Martell. The land so conveyed, hereinafter called the Martell lot, is in the northeast corner of the original parcel, and is about 35 feet wide on Center Street and 80 feet deep.

On December 11, 1906, Addie Richardson, who became the owner of the remaining property at George Richardson's decease, conveyed to the defendant Chaffee all that remained of the original parcel, including the right of way, except a piece next west of the Martell lot. The piece so excepted has a frontage on Center Street of 55 feet and is 80 feet deep. The land conveyed to Chaffee is irregular in shape as will hereinafter appear.

On July 18, 1912, Addie Richardson conveyed to the orator the land excepted from the deed to Chaffee, and the same is hereinafter called the Howley lot.

At the time Mrs. Richardson deeded to Chaffee, the buildings and structures standing on the premises mentioned were located as follows:

On the Martell lot was a brick block fronting on Center Street, with a wooden addition on the rear. This structure occupied the whole width of the lot, and all of its depth except about 7 or 8 feet. This left an open space between the Martell building and the south line of the lot about 35 feet east and west, and about 8 feet north and south.

On the Howley lot was a brick block fronting on Center Street. This block was 55 feet wide and 50 feet deep. It occupied the entire frontage of the lot, and had a wooden addition on the rear at the southeast corner. An old barn, hereinafter called the north barn, stood on the Howley lot in the rear of the block just mentioned. This barn extended practically (if not quite) to the west line of the Howley lot, and practically (if not quite) to the south barn, hereinafter described. There was an open space between the north barn and the Howley block of about 4 feet, extending from the west line of the lot to a point about 10 feet from the east line thereof, where it came to the wooden addition already referred to. This addition completely filled the space between this barn and the Martell lot to a point as far south as the addition of the Martell block extended. And from that point, a platform extended south to the south line of the Richardson land, completely filling the space to the south barn and the east line of the Howley lot. This wooden addition to the Howley block was used for a harness shop. It thus appears that the Howley lot was completely covered with structures, except for the four foot space above mentioned.

On the land conveyed to Chaffee, was a livery stable fronting on Center Street, occupied by one Morse, as tenant. This stable was a rectangular, wooden building, extending from the Howley block to the west and south lines of the west part of the Chaffee lot. The Chaffee lot also included a strip of land lying south of the Howley and Martell lots, and some land extending further south to the Bardwell stables, so-called. So the deed to Chaffee included 8 or 9 feet off the south side of the north barn and the platform at its east end. South of this barn, and on the Chaffee lot, stood another old barn, hereinafter called the south barn. This came nearly to the west line of the Chaffee lot at that point, and quite to the south line agaist the Bardwell stable. It ex-

tended east to a point about as far as the middle of the Martell lot, and had a shed attached at its southeast corner. There was an open space on the Chaffee lot in the rear of the Martell lot, extending from the east side of the platform to the east line of the lot, and the east part of this space extended south along the east end of the south barn to the shed mentioned. The right of way from Wales Street ran to the east line of this open space.

It thus appears that the Chaffee lot was fully covered with buildings and structures, except this open space east of the platform and the south barn.

By the deed to Chàffee, a ten foot open space across the rear of the Howley lot was stipulated for, to be used for a common passage-way, and for light, air, and fire-escapes for both parties.

The Howley block was divided on Center Street into three stores and a stairway leading to the upper floors. The stores had basements, which opened into the four foot space above mentioned. Ever since this block was built (1885), Richardson and his tenants have continuously used the right of way from Wales Street. Their teams would come in from Wales Street, swing around the northeast corner of the south barn to the platform above mentioned. This is as far as teams could go, as the north barn, the harness shop and the platform blocked the way. The evidences of this use of a way by the occupants of the Howley block were plain to be seen upon the ground. Some use of the open space on the rear of the Martell lot was also made by these teams, especially in turning around, as the space next to the platform and on the Chaffee lot was only about ten feet wide.

There was no opening in either the north or east walls of either of the barns, except a door in the east end of the south barn nearly or quite opposite the right of way to Wales Street. Notwithstanding the finding that at the time the Chaffee and Howley deeds were given, the Howley lot was fully covered with buildings and structures, except as noted, and teams could only go as far west as the platform, the Chancellor finds that there was access to the rear of the Howley block and the basements therein, by those on foot, and that a constant use was made of this way out from the basements. If this be so, such access must have been through the harness shop, for, as we have seen, there was no opening in the east or north walls of the north barn, and this barn and the harness shop filled the space on the Howley lot.

The lease of the livery stable and old barns did not expire

until April 1, 1913, so Chaffee did not get possession of these buildings until that time. Immediately thereafter he began tearing down the old buildings to prepare the lot for an opera house.

The Chancellor reports that access to the rear of the Howley block over the right of way to the Chaffee lot, and thence around the corner of the south barn as described is "reasonably necessary for the full, convenient and comfortable use and enjoyment of said block, and would add to the value of said block and would materially benefit it."

The decree below was for the orator and against Chaffee, only. The latter appealed.

The defendants treat the orator's suit as a claim of a way of necessity, so-called, and rely upon *Dee* v. *King,* 73 Vt. 375, wherein it is said that such a way is called into existence in cases of necessity, only; and that mere convenience, however great, will not suffice.

For present purposes we may assume that the rule regulating such ways is correctly stated in *Willey* v. *Thwing,* 68 Vt. 128, in the following quotation: "If A conveys land to B, to which B can have access only by passing over other land of A, a way of necessity passes by the grant. If A conveys land to B, leaving other land of A, to which he can have access only by passing over the land granted, a way of necessity is reserved in the grant." It thus appears, that in the matter of these ways, implied grants and implied reservations stand alike. The foundation of this rule regarding ways of necessity is said to be a fiction of law, by which a grant or reservation is implied, to meet a special emergency, on grounds of public policy, in order that no land be left inaccessible for the purposes of cultivation. *Bass* v. *Dyer,* 125 Mass. at 291.

It is apparent that the case in hand has no standing under this rule, for the orator's land fronts on one of the principal streets of the city, and is, of course, accessible therefrom.

The claim of the orator is in fact founded upon a different, though somewhat related ground,—a ground sometimes spoken of in the books as the doctrine of "visible servitudes;" sometimes as the doctrine of "easements arising from severance with apparent benefit existing;" and sometimes as the doctrine of "quasi easements." Much confusion of judicial thought has resulted from a failure to distinguish between ways of necessity

and ways arising under this latter doctrine,—a confusion, it must be admitted, from which our own cases have not wholly escaped.

With the character and extent of implied grants, we now have nothing to do. We are here only concerned with determining the circumstances which will give rise to an implied reservation. On this precise question the authorities are in conflict. Courts of high standing assert that the rule regarding implied grants and implied reservation of "visible servitudes" is reciprocal and that it applies with equal force and in like circumstances to both grants and reservations. But upon a careful consideration of the whole subject, studied in the light of the many cases in which it is discussed, we are convinced that there is a clear distinction between implied grants and implied reservations, and that this distinction is well founded in principle and well supported by authority. It is apparent that no question of public policy is here involved, as we have seen is the case where a way of necessity is involved. To say that a grantor reserves to himself something out of the property granted, wholly by implication, not only offends the rule that one shall not derogate from his own grant, but conflicts with the grantor's language in the conveyance, which, by the rule, is to be taken against him, and is wholly inconsistent with the theory on which our registry laws are based. If such an illogical result is to follow an absolute grant, it must be by virtue of some legal rule of compelling force. The correct rule, is, we think, that where, as here, one grants a parcel of land by metes and bounds, by a deed containing full covenants of warranty and without any express reservation, there can be no reservation by implication, unless the easement claimed is one of strict necessity, within the meaning of that term as explained in *Dee* v. *King*, 73 Vt. 375.

While some of the older authorities attach to an implied reservation a less strict requirement of necessity than this, the decided tendency of the courts is toward the more logical and sensible rule above stated.

Thus, after some divergence of judicial opinion and consequent uncertainty in the law, strict necessity has come to be the settled rule of implied reservations in England. *Suffield* v. *Brown*, 4 De G. J. & S. *185; *Weldon* v. *Burrows*, 12 L. R. Ch. D. 31; *Crossley* v. *Lightowler*, 2 L. R. Ch. App. 478.

So, too, in New York, though it was formerly thought, *Lampman* v. *Milks*, 21 N. Y. 505, that the rule of visible servitudes

worked both ways, the distinction between implied grants and implied reservations is now fully established, and it is held that an implied reservation only arises when the easement claimed is necessary in the strict sense of the term. *Hill* v. *Bernheimer*, 140 N. Y. S. 35; *Lathrop* v. *Lytle*, 145 N. Y. S. 906; *Wells* v. *Garbutt*, 132 N. Y. 430; *Paine* v. *Chandler*, 134 N. Y. 385.

It was said in *Carberry* v. *Willis*, 89 Mass. 364, that "where there is a grant of land by metes and bounds, without express reservation and with full covenants of warranty against incumbrances, we think there is no just reason for holding that there can be any reservation by implication, unless the easement is strictly one of necessity. Where the easement is only one of existing use and great convenience, but for which a substitute can be furnished by reasonable labor and expense, the grantor may certainly cut himself off from it by his deed, if such is the intention of the parties. And it is difficult to see how such an intention could be more clearly and distinctly intimated than by such a deed and warranty."

It should be noted in this connection that the Massachusetts court applies the rule of strict necessity to grants as well as reservations. *Bass* v. *Dyer*, 126 Mass. 289.

The Massachusetts rule prevails in Maine. In *Warren* v. *Blake*, 54 Me. 276, the court quotes and adopts the rule of *Carberry* v. *Willis*, as above, suggesting that to hold otherwise would open the door "to doubt and uncertainty, to the disturbance and questioning of titles, and to controversies as to matters of fact, outside of the language or boundaries of the deed." This holding was approved as settled law in *Stevens* v. *Orr*, 69 Me. 323. See, also, *Stilwell* v. *Fester*, (Me.) 14 Atl. 731.

*Mitchell* v. *Seipel*, 53 Me. 251, 36 Am. Rep. 404, is a well considered and instructive case in point. The owner of a lot built two houses on it. One was fifteen feet wide; the other was twelve and one-half feet wide on the ground, but fifteen feet wide above the first story. This left between the houses and alley two and one-half feet wide. extending from the street to the back yard of the houses. Above the alley, the timbers of the narrow house extended across the alley and rested on the wall of the other house. The alley was used as a common passageway by the occupants of both houses. The narrow house was sold by a deed which included the alley, but without any reservation of any right therein. Then the other house was sold by a deed

embracing no part of the alley. The court reviews the cases, English and American, and "being satisfied the distinction so clearly drawn in those decisions between what has been called implied grant, and what has attempted to be established under the name of an implied reservation, is not only founded in reason, but has existed almost as far back as the law upon the subject can be traced," reaches the conclusion that no implied right in the alley was reserved in the first sale, as use of the alley was not legally necessary to the other house. This rule is approved in *Burns* v. *Gallagher*, 62 Md. 462; *Jay* v. *Michael*, 92 Md. 210, 48 Atl. 61, and *Mancuso* v. *Riddlemoser Co.*, (Md.) 82 Atl. 1051.

In *Cherry* v. *Brizzolara*, (Ark.) 21 L. R. A. (N. S.) 508, the distinction is recognized and the rule stated thus: "But there is a marked difference between an implied grant and an implied reservation by easement, in the conveyance of the dominant and servient estate. Where a man grants the dominant estate, he grants with it everything necessary to its enjoyment; and by the grant there passes by implication to the grantee all those continuous and apparent easements, which are necessary to the reasonable enjoyment of the property granted, and which have been, and are at the time of the grant, used by the owner of the entirety for the benefit of the part granted. * * * But, where the owner has sold and granted the servient estate and attempts to retain by implied reservation, the easement for the estate he retains, the matter stands on a different footing. The grant is taken more strongly against the grantor. * * * And so the great weight of authority is that where there is a grant of land with full covenants of warranty, and without express reservation of easement, there can be no reservation by implication unless the easement is strictly one of absolute necessity."

Other cases recognizing this distinction between grants and reservations are *Walker* v. *Clifford*, 128 Ala. 67, 86 Am. St. Rep. 74; *Brown* v. *Fuller*, 165 Mich. 162, 24 Ann. Cas. 853; *Tooth* v. *Bryce*, (N. J.) 25 Atl. 182; *Denman* v. *Mentz*, (N. J.) 52 Atl. 1117; *Wilson* v. *Riggs*, 27 App. D. C. 550; *Crosland* v. *Rogers*, 32 S. C. 130; *Scott* v. *Bentre* 23 Gratt. (Va.) 1.

The doctrine of visible servitudes is not new in this State. It was in *Harwood* v. *Benton*, 32 Vt. 724, that it was first recognized by this Court. Judge Barrett therein calls attention to the rule that, while an owner of a parcel of land could not have an easement in one part in favor of another part thereof,

yet, by force of his ownership, he could use it as he pleased and impress it with such conditions as he chose, which upon sever ance, would survive. And it was accordingly there held that the parcel of land sold was subject to the seller's right to maintain his millpond on the part reserved, though he thereby interfered with the full enjoyment of the premises conveyed.

The subject has been before the court in various cases since, including *Cooleidge* v. *Hager,* 43 Vt. 9; *Goodall* v. *Godfrey,* 53 Vt. 219; *Wiswell* v. *Minogue,* 57 Vt. 616; *Willey* v. *Thwing,* 68 Vt. 128; *McElroy* v. *McLeay,* 71 Vt. 396, and *Dee* v. *King,* 77 Vt. 230. Of these cases *Harwood* v. *Benton* and *Wiswell* v. *Minogue* and *Willey* v. *Thwing,* were, alone, cases of implied reservations, which need be noticed in this discussion.

It was said in the former, in speaking of Gale & Whately on Easements, that the learned authors show that in this class of cases, "while the law will make all necessary implications to prevent the grantor from derogating from his own grant, it will reciprocally and equally make like implications to prevent the grantor from being shorn of his just rights in reference to the property which he retains." So far as the opinion may be taken as an endorsement of this statement, it was a pure dictum, for it was wholly unnecessary to the decision. The case then before the court was manifestly one in which the easement reserved was one of strict necessity,—for a mill without a mill pond would be wholly useless, and no substitute could be provided. So this statement that the law would *reciprocally* and *equally* imply a reservation in favor of the grantor was outside the decision.

Again, in *Wiswell* v. *Minogue* it is said that "it is now universally recognized that, from the necessity of a right of way to the reasonable use and enjoyment of land granted or reserved, is to be found an implied grant or reservation of such right, in the absence of some express negation thereof in the deed." Here, again, the court, as the opinion says was discussing a case wherein the easements were of strict necessity. When the farm was first sold a landlocked quarry was reserved,—a typical case of a way of necessity by implied reservation. When the 3½ acre piece was conveyed to the quarry owner, the easement claimed was not *reserved* but *granted.* And this, too, was a plain way of necessity, as the case shows that the quarry owner, even after the purchase of the 3½ acre piece, had no other way out to the highway except over the way claimed. So no reference to the

doctrine of visible servitude was required, and the quotation above was wholly *obiter*.

*Willey* v. *Thwing* was apparently a way of strict necessity. Both doctrines herein discussed were referred to in the opinion, but no attempt was made to define the degree of necessity required in visible servitudes reserved by implication.

We find, then, no binding precedent in this State to embarrass us in the adoption of the rule of the best considered cases hereinbefore stated. Indeed, the very distinction which we now adopt was referred to in *Goodall* v. *Godfrey,* 53 Vt. 219, with a very broad intimation that it was sound in law. For Judge Veazey said in the opinion that if the owner of the property had in his lifetime divided it, and then "sold the east and west tenements to the plaintiff without reservation of a right of way for the middle tenement, then it might be argued, upon strong authority, that he did not retain such right of way by implication. Although it may have been held that there is no distinction in legal effect between what has been called an implied grant and an implied reservation, such a distinction has been recognized in many well-considered cases. * * * This distinction is only alluded to, not passed upon." It is a fair assumption from this language that the court did not then understand that the distinction had ever been passed upon in this State up to that time.

In this state of the law of the subject in this jurisdiction, we do not hesitate to put ourselves in line with the modern holdings.

That the way here in question is not necessary to the Howley block in the strict sense of the term is apparent. The finding is that it "is reasonably necessary for the full, convenient and comfortable use and enjoyment" of the block. This is not enough under the rule herein adopted. It is apparent that the way is highly convenient, but it is not indispensable. For aught that appears a substitute through the stores can be prepared without unreasonable trouble or expense. It may be safely said that it appears that this can be done. At any rate, whatever inconvenience may result,—whatever detriment to the Howley block may follow this decision,—it is attributable to the deliberate act of Mrs. Richardson, who could have (had she so desired or intended) averted it all by a stroke of her pen when she deeded to Chaffee.

In reaching this result, we make no reference to several special circumstances tending strongly to show that Mrs. Rich-

ardson had, in fact, no idea that this way was to be kept open after the Chaffee deed was given.

*Decree reversed and cause remanded with directions to dismiss the bill.*