FRANK W. GOODALL *v.* RUFUS B. GODFREY.

*Right of Way from Necessity, or by Implication.*

1. When the real estate of a deceased person is divided among the heirs by commissioners appointed by the Probate Court, *a right of way, of necessity or by implication, may exist over one part to another part of said real estate.*
2. If such right of way is appurtenant to that portion set out as dower, and not simply appurtenant to the freehold estate of the dowager, it is not *extinguished on the death of the widow ;* and passes to a grantee, or purchaser.
3. Distinction, as to a right by implication, between a *partition among heirs,* and a *purchase by a stranger.*
4. So far as it is a question of necessity, *reasonable,* not *strict,* necessity is the test; but such right is determined not on the ground of necessity alone, but by the acts of the parties and in the light of circumstances.

ACTION of trespass on the freehold, for entering the plaintiff's close in Bennington village with a strong hand, &c., and demolishing a shed. Writ dated January 9, 1878. Plea, general issue and notice. Trial by jury, December Term, 1878, Bennington County, DUNTON, J., presiding. Verdict for the defendant.

Jacob Lyons formerly owned the described close, with what are now three other adjacent lots. He used the premises in his lifetime for a tavern stand ; and they were so used for some time after his death, which occurred in 1844. The building fronted the main street in Bennington village ; back of it was a garden toward the north, and on the east side of the lot were the tavern barn and horse-shed. The whole front and rear of the premises were open to the public in connection with the tavern, to the same extent such premises usually are. Lyons left a widow and five children. Administration was taken upon his estate ; and the tavern property, in 1846, was divided by commissioners of dower and partition into four portions, separated by lines running back from the street to the rear, a distance of eight or ten rods ; each portion having an average width and front upon the street of about twenty-five feet, and a garden in the rear. The middle tenement was assigned to the widow ; the east and west tenements, respectively, to her two daughters.

There were no fences separating any of the assigned parcels of land, and no buildings, nor obstructions, except said house, barn and horse-shed, to prevent teams from driving practically all over the land ; and there was a drive-way east of the tavern-house, leading to the barn and beyond, and to the rear of the tavern, which had always been used by the occupants of the tenements. Small wood-sheds were built, attached to the east and west tenements ; and some were built in the yard ; but not so as to obstruct free passage all over the lots until, in the winter and spring of 1877, the plaintiff moved a house up a little north-west of the west tenement, and moved a shed between the two, cutting off the passage ; and in December, 1877, he built the shed for the east tenement in the drive-way, completely stopping it up. The action was brought for removing the shed so built, in December, 1877. The plaintiff made several requests as to how the court should instruct the jury ; and took several exceptions to the charge as given ; but none of these is required to understand the decision. The other facts are sufficiently stated in the opinion of of the court.

*Gardner & Harman*, for the plaintiff.

No proof of adverse use. *Plimpton* v. *Converte*, 44 Vt. 158. Evidence of *necessity* not sufficient to go to the jury. *Bent* v. *Manning*, 10 Vt. 225 ; *Sessions* v. *Newport*, 23 Vt. 9 ; *Briggs* v. *Taylor*, 28 Vt. 180 ; *Brow* v. *Hathaway*, 13 Allen, 239. Legal necessity. Washb. Ease. 86, 87, 19, 62, 66* ; *Pheysey* v. *Vicary*, 16 M. & W., 484. Continuous and discontinuous easements. Washb. Ease., 18, 19, 87 ; 24 N. H., 489 ; 1 N. H., 916. Inference of necessity arises from the fact of *no access*. *Trask* v. *Patterson*, 29 Me., 499 ; *Kuhlman* v. *Hecht*, 77 Ill., 570 ; *Leonard* v. *Leonard*, 2 Allen, 543 ; *Ogden* v. *Gove*, 38 Penn., 487 ; *Pearson* v. *Spencer*, 101 E. C. L., 484 ; *Tracy* v. *Atherton*, 35 Vt. 52 ; Washb. R. P. 2 Ch. 1, s. 3, p. 306. A way of necessity does not depend on previous user. *Russell* v. *Jackson*, 2 Pick. 587 ; *Holmes* v. *Seeley*, 19 Wend., 507 ; 21 N. J. L., 133 ; nor license, 77 Ill., 570. If there was a right of way, it would cease on the death of the widow. Washb. Ease., 6 ; *Hoffman* v. *Savage*, 15

Mass, 131. Upon the facts the presumption is that the easement was not meant to be granted. 14 Mass., 49; 2 Metc., 241. Convenience, not necessity. 14 Mass., 49; 24 Pick., 102; 16 M. & W., 496; 18 Conn., 321; 23 Vt. 631. The servient owner can designate the way. 2 Pick., 578.

*T. Sibley* and *J. K. Batchelder*, for the defendant.

A right of way is implied from the necessity of the case. *Snyder* v. *Hastings*, 22 N. Y., 217; Washb. R. P. 2, 282; 19 Wend. 507; *Peman* v. *Weed*, 2 Mass., 206; 3 Kent, 419, 420, 421; *Tracy* v. *Atherton*, 35 Vt. 52; 8 Term R. 50; Hilliard on R. P. 16, 17. It is not essential to raise the presumption of a grant that there should be an absolute, irresistible necessity. *Momson* v. *King*, 62 Ill., 30; 3 N. H. 190; *Burr* v. *Dyer*, 125 Mass. 287; 2 McCord, 445; 3 Taunton, 230; *Davis* v. *Sears*, 7 Eng. Eq. 427; *Phillips* v. *Phillips*, 48 Penn. St. 178; 1 La. An. 407; *Blakely* v. *Shay*, 9 N. J. Eq, 9; 18 N. J. Eq. 260; 7 Allen, 369; *Nichols* v. *Luce*, 24 Pick. 102. When the land was divided, the easement passed. *Tyler* v. *Townshend,* 8 Mass. 411; 15 Conn. 39; 21 N. Y. 505; Washb. on Ease., 53, 54, 529; Washb. on R. P. 288, 289, 290, 291.

The opinion of the court was delivered by

VEAZEY, J. The question in this case, upon the undisputed facts, is, whether, in the division of the tavern property after the decease of Jacob Lyons in 1844, a right of way was set out, by implication, to the middle tenement around the adjoining east or west tenement.

The plaintiff's counsel, relying on the distinction recognized in the books between what are called apparent and continuous easements, and discontinuous easements, the former being defined to be those which are constant and visible, without any act of the individual in their use, and the latter, those which are only observable in their exercise, which is occasional, insist that a right of way is not such an easement as ever arises by implication except in case of absolute necessity, as where premises are " landlocked."

In *Harwood* v. *Benton & Jones*, 32 Vt. 733, BARRETT, J. says, referring to Gale & Whateley on Easements, ch. 5 : "It is laid down as an unquestioned proposition, that, upon the severance of a heritage, a grant will be implied of all those continuous and apparent easements which have in fact been used by the owner during the unity, though they have had no legal existence as easements."

In that case the owner of a mill and an artificial pond with the surrounding land, granted a parcel of such surrounding land, not bounded on the pond, by warranty deed, with no expressed reservation therein of any right to flow the same ; and it was held that by his deed he did not part with the right to flow such land as he had formerly flowed it.

The learned judge after referring to the use to which the owner had subjected the surrounding lands for the convenience of the mill, says : "This then was a palpable and impressed condition, made upon the property by the voluntary act of the owner ; and we think that, without any stipulation in the deed upon the subject, the true view of the law is, that the grantee took the land which he purchased in that impressed condition, with a continuance of the servitude of that parcel to the convenience and beneficial use of the mill."

There has been much controversy both in England and America, as to whether in the severance of a heritage by a grant of a parcel of it, any easement except one of *strict necessity*, passes or is reserved by *implication*. The authorities upon the subject are cited and discussed in Washburn's Easements and Servitudes, ch. 1 s. 3. The learned author finally says, p. 74, 3d Ed. : "Thus, in some cases, rights of way are treated as non-apparent easements ; in others the mode of enjoying them gives them the character of being apparent. But there is one test which may be applied to all cases of grants of one or two tenements, in determining whether an easement or servitude is created in respect to either by an implied grant or reservation, and that is the reasonble necessity of such an easement to carry into effect the purposes of the grant." And again on page 95, 3d Ed., he says : "It would seem that, in case of a division of an estate consisting of two

or more heritages, whether an easement or convenience which may have been used in favor of one, in or over the other, by the common owner of both, shall become attached to the one or charged upon the other in the hands of separate owners, by a grant of one or both of those parts, or upon a partition thereof, must depend, where there are no words limiting or defining what is intended to be embraced in such deed or partition, upon whether such easement is necessary for the reasonable enjoyment of the part which claims it as an appurtenance. It must be reasonably necessary to the enjoyment of the part which claims it, and where that is not the case, it requires descriptive words of grant or reservation in the deed, to create an easement in favor of one part of a heritage over another."

It is plain that a right of way to the rear of the middle tenement, around one end of the tavern building was reasonably necessary to the enjoyment of it. The garden in the rear was on an average, according to the plan referred to in the exceptions, about nine rods long by nearly two rods wide. The building covered the whole front of the middle tenement, there being about twenty-five feet wide. The occasion for a drive-way to the rear appears to have been what the ordinary convenience of such a tenement requires. Without going over the part set to the east or west tenements, being now the plaintiff's land, such a drive-way could be obtained only by removing a portion of the building, practically destroying it. There was a drive-way in use all around the building, while Jacob Lyons owned and occupied it as a tavern ; and this use continued after his decease as before. This drive-way was twelve and one-half feet wide east of the building ; and was defined by the building on one side and a fence on the other. With this impressed, visible, defined way in use for the obvious convenience of the whole building, the commissioners made the division between the widow and daughters. In the absence of anything to show why a way was not provided for the convenience of the middle tenement, it seems very singular that the commissioners should have omitted it unless they understood one would be created by implication. It appears to have been deemed important, for some reason not explained, that the west tenement

should have a right of way around the east end of the building. It is plain that this would not exist without express provision; therefore, the commissioners made such provision. The necessity to make express provision for a way for the east tenement apparently arose from the fact that it seems to have been deemed desirable to have it go right through the barn belonging to the middle tenement. Therefore, no inference can be drawn against the claim of an intended way by implication for the middle tenement, from the express provisions for a way for the other two tenements. After the partition in 1846, the widow and daughters occupied one or the other of said tenements, renting the other two; and they and their tenants always used the drive-way around the house for the convenience of all the tenements; and this continued for nearly thirty years, and was the obvious condition and enjoyment of use when the plaintiff bought the east and west tenements in 1875, and until after the defendant and others bought the middle tenement in 1877.

A right by implication sometimes arises in a case of a partition between heirs, when it would not arise in a case of a conveyance of one part of a heritage. In *Brakely* v. *Sharp*, 2 Stockt. 206, the intestate owned two farms at his death, with a house on each; and had constructed an aqueduct from a spring upon one of them to both these houses. Upon his death the farm, upon which was the spring, was set to the widow and one heir, and the other farm to the other heir. The question arose as to the effect of this partition upon the right which the owner of the second farm had to those in connection with his house, in the benefit of this aqueduct. The chancellor held, that, if the ancestor, while owning both farms, had conveyed to a stranger the one which was set to the widow, he would have lost all benefit of the aqueduct as an easement, if he had not expressly reserved it in his deed; but the widow and heir did not stand in the light of purchasers from the ancestor. All the heirs came in with equal rights; and no preference arose from mere priority of assignment. See *Collins* v. *Prentice*, 15 Conn. 38; *Jenkins' Centurus*, Ca. 37; *James* v. *Plant*, 4 Adolph & E. 749; *Buswell* v. *Hobson*, 12 Gratt. 322; *Kilgour* v. *Ashcom*, 5 Harr. & J. 82; *Turringham's Case*, 4 Rep.

36 ; *Seymour* v. *Lewis*, 13 N. J. Eq. 439 ; *Elliott* v. *Sallee*, 14 Ohio St., 10.   We think this is a case where the owner had created and impressed a peculiar quality to the different parts of his estate, so that one portion became, as the building was constructed, visibly dependent upon another for the means of access thereto.   As the learned judge says in *Harwood* v. *Benton & Jones*, *supra :* " This condition of the estate was obvious, and had been continuous, and was of a character showing that it was designed to continue thereafter as it was in fact done."   Therefore when the partition took place it was a partition of the estate as it then was, and carried by implication the same right of access to each part over the other as had theretofore been plainly and obviously enjoyed, so far as was reasonably necessary for the enjoyment of each part.   *Janes* v. *Jenkins*, 34 Md. 1 ; *Lampman* v. *Milks*, 21 N. Y. 505 ; *Durel* v. *Baisblane*, 1 La. An. 407 ; Washburn's Easements and Servitudes, p. 75, 3 ed. and cases cited in note 2 ; *Thompson* v. *Miner*, 30 Iowa, 386 ; *Morrison* v. *Marquarett*, 24 Iowa, 35 ; *Leonard* v. *Leonard*, 7 Allen, 277 ; *Pearson* v. *Spencer*, 1 B. & Smith, 580 ; s. c. 3 B. & Smith, 761 ; *Phillips* v. *Phillips*, 48 Penn. St. 178.

If Jacob Lyons in his lifetime had divided the tavern property as the commissioners did, and then sold the east and west tenements to the plaintiff without reservation of a right of way for the middle tenement, then it might be argued, upon strong authority, that he did not retain such right of way by implication ; because it would have been in derogation of his grant.   Although it may have been held that there is no distinction in legal effect between what has been called an implied grant and an implied reservation, such a distinction has been recognized in many well-considered cases.   See *Suffield* v. *Brown*, 9 L. T. Rep. (N. S.) 627 and 4 De. G. J. & S. 185 ; *Wheeldon* v. *Barrows*, 12 L. R. Ch. D. 31 ; *Brakely* v. *Sharp*, *supra.*

Under this distinction Jacob Lyons would not retain a way by implication for the middle tenement in a sale of the east and west tenements, but would convey one by selling the middle tenement and retaining the others.   This distinction is only alluded to, not

15

passed upon. These premises were divided between the heirs by commissioners, just as Jacob Lyons left them, having a visible way all around the building for the convenience of the whole. There was no priority of assignment or grant. There was, indeed, no grant in the sense in which that term is used in the cases, where it is held that a grantor shall not derogate from his grant. It was a division of the property as it stood, under the law; not a sale. Therefore, to give that division such construction as to secure what seems not only so reasonable, but so important to the beneficial enjoyment of the middle tenement, would be, as we think, but carrying out what the commissioners intended, and what the case fairly shows the heirs understood. The construction is to be determined not on the ground of necessity alone, but by the acts of the parties and in the light of circumstances. As stated by MORTON, J. in *Nichols* v. *Luce*, 24 Pick. 102: "It is not the necessity which creates the right of way, but the fair construction of the acts of the parties;" and by WAITE, J. in *Collins* v. *Prentiss*, 15 Conn. 39: "In strictness the necessity does not create the way, but merely furnishes evidence as to the real intention of the parties;" and again, page 425, when the same case was before the court a second time: "It arises from a fair construction of the deed as to the *presumed* intent of the parties." These cases were cited with approval by BARRETT, J., in *Tracy* v. *Atherton*, 35 Vt. 52; and are referred to as showing upon what considerations a way is upheld where it is not expressly set out in a petition.

As the heirs, to whom were set the east and west tenements, took them subject to this servitude, they could convey no more than they received. Therefore, when the plaintiff bought, he took the east and west tenements subject to a right of way to the rear of the middle tenement for its benefit, either by the east or west route. He may have had the right to select which should be used. This he very plainly did when he blocked up the west route.

The plaintiff claims that if there was a way by implication for the middle tenement in the division of the estate, it was appurtenant to the widow's life estate, and ceased with it. We do not

think that the way in question was simply appurtenant to the free-hold estate of the dowager. See *Summers* v. *Drew*, 21 Pick. 278; *Brakely* v. *Sharp*, *supra.*

As the widow and her daughters to whom the other tenements were set out, were living together and continued so to live, occupying one tenement and another after the division, there was no necessity of the way as a convenience to the widow personally. The necessity for the convenience of the middle tenement has already been shown. That necessity would continue the same after the termination of the life estate. We are aided by no words of grant or reservation; but are to give construction to a partition in the light of facts and circumstances. In *Hoffman* v. *Savage*, 15 Mass. 130, the earliest and leading case, to which we have been cited, where it was held that the way was but appurtenant to the freehold estate of the dowager, and expired with it, a piece of land was assigned to the widow as her dower, " and the privilege of a passage way for bringing in wood." These words plainly indicate the restricted purpose of the privilege assigned.

The use of the way in question continuing for so many years for the convenience of the middle tenement, not only while the mother and both daughters lived, but after the decease of Laura in 1867, who devised all her property to her sister Eunice; also after the decease of the mother in 1870, when the middle tenement reverted to her children and so remained until 1875, when Eunice and her husband conveyed the east and west tenements, and her two fifths interest in the middle tenement to the plaintiff, and when another heir conveyed to him another fifth; and this use being palpable under all the different ownerships, and unquestioned from 1846 until 1877, indicates at least that it was the understanding of these parties that this way was an appurtenant of the middle tenement. And although the plaintiff owned the whole of the east and west tenements and the three-fifths interest in the middle tenement from November, 1875, until April, 1876, when the administrator *de bonis non* of Jacob Lyons sold the middle tenement, it appears that the way was used the same as before the plaintiff's ownership; and the sale took place under those circumstances. Although it was not a sale by the plaintiff, it was a sale

in a measure in his behalf. Had the plaintiff himself sold the middle tenement when owning the other two, and with this servitude visibly impressed and obviously being enjoyed as it was when the administrator sold, the case would have been clearly within the rule as announced in *Harwood* v. *Benton & Jones, supra,* and within the first general principle deduced from the cases by THESIGER, L. J., in *Wheeldon* v. *Barrows, supra.*

The facts of this case are peculiar, but upon consideration of them in the light of adjudged cases, we think that by the weight of authority and upon settled principles, they make a defence. Therefore, as they are undisputed, the defendant was entitled to the judgment, as it was, in his favor in the County Court ; which renders it unnecessary to examine or pass upon the charge of that court, to which exception was taken.

Judgment affirmed.