## Traders, Inc. v. Hollis Bartholomew, Clyde Bartholomew and Town of Benson

[459 A.2d 974]

No. 507-81

Present: **Billings, Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned**

Opinion Filed February 7, 1983

*Bloomer and Bloomer,* Rutland, for Plaintiff-Appellant.

*Langrock Sperry Parker & Wool,* Middlebury, for Defendants-Appellees Bartholomew.

*Kelley & Meub, Ltd.,* Middlebury, for Defendant-Appellee Town of Benson.

**Billings, J.** Plaintiff-appellant commenced a declaratory judgment action in Rutland Superior Court, seeking a determination whether a town highway located in the Town of Benson, and passing through to plaintiff's 121 acres of land-locked property, had been properly discontinued; and, in the alternative, whether a way of necessity existed across defendants-appellees Bartholomew's land affording plaintiff access to its 121-acre parcel. The trial court concluded that the town highway discontinuance proceedings in 1908 were in accordance with statutory requirements and thus valid. The court further found that plaintiff had a prescriptive easement along the former town highway, but that such easement was limited by past use to a strip of "sufficient width to accommodate a driveway for a single dwelling with appurtenant agricultural uses."

Plaintiff appeals, claiming first that the town highway extended into the Town of Hubbardton, that it therefore was not discontinued in accordance with statutory law, and so still exists as a public highway. Alternatively, plaintiff contends that the easement is properly one of necessity, not a prescriptive easement, and that it therefore exists without limitation as to prior use.

We turn first to the facts as found by the trial court. Prior to 1908, Town Highway 16 ran east and west, crossing the land now owned by the Bartholomews, and bordering the northern boundary of the 121-acre parcel now owned by plaintiff. On August 15, 1908, the selectmen of the Town of Benson discontinued the highway some distance west of the 121-acre parcel, and set the road to the owners on the north and south, one-half to each: the owners on the north took everything north of the centerline, and those on the south everything south of the centerline. P.S. § 3904 (1906) (current version at 19 V.S.A. § 535). Plaintiff, however, claims that in 1908 the highway extended all the way into the Town of Hubbardton, and since the Benson selectmen did not take their discontinuance proceedings into the county court, as required when a highway extends into two or more towns, the discon-

tinuance was invalid. P.S. § 3873 (1906) (current version at 19 V.S.A. § 681).

In support of its claim, plaintiff introduced at trial an unofficial 1869 edition of the Beer's Atlas for Rutland County, showing the existence of an unnamed road extending into Hubbardton. The trial court found no other evidence tending to show that any portion of the road to Hubbardton was a town, state aid or public highway in 1908. On the other hand the Town of Benson introduced various highway maps and other records in support of its claim that Highway 16 did not extend to Hubbardton. Based on all the evidence, the trial court found that in 1908 Town Highway 16 did not extend into Hubbardton and that Benson's discontinuance proceedings were proper. See P.S. §§ 3873, 3900–3901 (1906) (current versions at 19 V.S.A. §§ 681, 531–532).

██ On the record before us, we cannot say that the trial court erred in determining that the 1869 Beer's Atlas was of insufficient weight to establish that Highway 16 continued into the Town of Hubbardton in 1908. This is especially true, given the presumption that action taken by selectmen in the scope of their official duties is regular and in accordance with statutory requirements. *Murray* v. *Webster*, 123 Vt. 194, 200, 186 A.2d 89, 93 (1962). Moreover, defendants presented ample evidence that, in their discontinuance proceedings, the Benson selectmen complied with statutory requirements for notice, examination of premises, hearing and recording. P.S. §§ 3900–3901 (1906) (current versions at 19 V.S.A. §§ 531–532). We therefore affirm the trial court's finding that in 1908 Highway 16 did not extend into two or more towns, and thus that the road was properly discontinued. Given that the discontinuance was proper and valid, we proceed to evaluate plaintiff's second claim, whether an unlimited way of necessity exists over the discontinued road leading to its 121-acre parcel.

At the time of the discontinuance the disputed 121-acre southern parcel, now owned by plaintiff, as well as two other parcels north of the highway, now owned by the Bartholomews, were all commonly owned. At that time, given the single ownership, there was full access to the southern 121 acres through the parcel lying north of the old highway's

centerline. In 1931, after having mortgaged the two northern parcels, the common owner lost them by a decree of foreclosure. By such action, the 121 southern acres were severed from the two northern parcels, thus landlocking the southern property. Ownership of the two northern properties devolved to defendants Bartholomew in 1944. In 1971, the Bartholomews purchased a lot south of the discontinued highway, adjacent to and just west of the 121-acre parcel. This lot came out of an entirely separate line of title, and was never part of the commonly owned lands. In 1976, after several transfers of title, plaintiff obtained ownership of the 121-acre landlocked parcel, with no right-of-way reserved in the deed.

The court below found that evidence was totally absent regarding the use made of the discontinued road up until 1943. However, in 1943 the Bartholomews purchased timber on the 121-acre parcel from its then owners, and used the road to remove the timber. In that same year, the then owners of the 121-acre parcel erected a small dwelling house on their land, and used the road until 1976 for ingress and egress, and for light agricultural purposes. In 1973, the Bartholomews built a gate at the westernmost point of the discontinued highway, thus blocking the way leading to plaintiff's 121-acre parcel. They did this with the apparent consent of the then owners, who continued to have access through the gate. Plaintiff, since acquiring ownership of the 121-acre parcel in 1976, has neither occupied the land for dwelling purposes, nor driven motor vehicles over the discontinued road.

The trial court found that by their use of the discontinued road during the period from 1943 to 1976, the prior owners of the 121-acre parcel had established a prescriptive easement to the portion of the roadway leading to their land. The court further found that the scope of the easement was limited by the use which created it: ingress and egress to and from a single dwelling house, with appurtenant agricultural uses. This easement passed to plaintiff through its predecessors in title. Plaintiff takes exception to this conclusion, contending that, for the purposes of determining the nature and scope of the easement, the relevant date was not 1943, when its predecessors commenced to use the roadway, but rather 1931, when the 121-acre parcel was severed by the foreclosure action and effectively landlocked. This severance, plaintiff ar-

gues, created a way of necessity twelve years prior to the actions giving rise to a prescriptive easement. Further, plaintiff urges the scope of a way of necessity is not limited by its prior use, but rather is coextensive with the full and reasonable present and future enjoyment of the dominant estate. The Bartholomews take the contrary position, contending first that plaintiff has not met the requirements of a way of necessity, and further that such a way is limited to the use at the time of the severance.

This Court has long since ruled that when, as a result of the division and sale of commonly owned land, one parcel is left entirely without access to a public road, the grantee of the landlocked parcel is entitled to a way of necessity over the remaining lands of the common grantor or his successors in title. *Clark* v. *Aqua Terra Corp.*, 133 Vt. 54, 329 A.2d 666 (1974); *Pennock* v. *Goodrich,* 104 Vt. 134, 157 A. 922 (1932); *Willey* v. *Thwing,* 68 Vt. 128, 34 A. 428 (1896); *Tracy* v. *Atherton,* 35 Vt. 52 (1862); *Smith* v. *Higbee,* 12 Vt. 113 (1840).

A way of necessity rests on public policy often thwarting the intent of the original grantor or grantee, and arises "to meet a special emergency . . . in order that no land be left inaccessible for the purposes of cultivation." *Howley* v. *Chaffee,* 88 Vt. 468, 473, 93 A. 120, 122 (1915). "Its philosophy is that the demands of our society prevent any man-made efforts to hold land in perpetual idleness as would result if it were cut off from all access by being completely surrounded by lands privately owned." 2 Thompson on Real Property § 362, at 382 (1980).

It is apparent from the cases cited and arguments propounded by defendants Bartholomew that they have confused the law regarding a way of necessity with the wholly distinct doctrine of easements by implication. As we have had occasion to point out, see *Howley* v. *Chaffee, supra,* 88 Vt. at 473, 93 A. at 122, the two are distinguishable by the circumstances which give rise to them, the policy bases which support them and the legal consequences which flow from them. See *Tallarico* v. *Brett,* 137 Vt. 52, 57, 400 A.2d 959, 962 (1979); *Chevalier* v. *Tyler,* 118 Vt. 448, 111 A.2d 722 (1955); *Wheeler* v. *Taylor,* 114 Vt. 33, 39 A.2d 190 (1944); *Read* v. *Webster,* 95

Vt. 239, 113 A. 814 (1921); *Howley* v. *Chaffee, supra; Goodall* v. *Godfrey,* 53 Vt. 219 (1880). See generally, 2 Thompson, *supra,* §§ 355–362.

The Bartholomews correctly argue that there was a complete failure to prove the use made of the land by the common owner prior to and at the time of the severance. However, while such failure would be fatal to a finding of an easement by implication, *Tallarico* v. *Brett, supra,* and cases cited therein, it is totally irrelevant to a finding of a way of necessity. All that is required for the latter is the division of commonly owned land resulting in the creation of a landlocked parcel. *Howley* v. *Chaffee, supra.*

A review of the facts indicates that prior to the foreclosure action in 1931, there was unity of title in the two northern parcels and the 121-acre southern parcel. By the foreclosure decree a severance occurred by operation of law, see *Goodall* v. *Godfrey, supra,* 53 Vt. at 226, thus leaving the 121-acre parcel landlocked. At that instant, a way of necessity arose over the lands severed for the benefit of the original grantor. *Clark* v. *Aqua Terra Corp., supra,* 133 Vt. at 57, 329 A.2d at 668. This way did not (nor can it ever) lie over the Bartholomews' southern parcel to the west of the 121 acres, for those lands were never held in common with the other three parcels. See *Howley* v. *Chaffee, supra,* 88 Vt. at 473, 93 A. at 122; *Tracy* v. *Atherton, supra,* 35 Vt. at 53–54. See also *Selvia* v. *Reitmeyer,* 156 Ind. App. 203, 209, 295 N.E.2d 869, 873 (1973) (citing 5 Restatement of Property § 474, at 2972 (1944)).

The Bartholomews raise two arguments against such a way: first, that if it did exist as of 1931, it was extinguished in 1971 by operation of the state's so-called marketable title act, 27 V.S.A. §§ 601–606; and in the alternative, they contend that any such way was extinguished in 1958, when the plaintiff's predecessors in title acquired a prescriptive easement over the way, thus eliminating the element of strict necessity. We dispose of these contentions in turn.

■ Among those property interests specifically excepted from the operation of the marketable title act is the following:

Any easement or interest in the nature of an easement, the easement, the existence of which is clearly observable by physical evidences of its use.

27 V.S.A. § 604(a)(6). 1969, No. 235 (Adj. Sess.), § 2, eff. July 1, 1970. In this case the trial court found that the way now claimed by plaintiff was regularly and openly used by its predecessors in title from 1943 to 1976. In addition, the court found that over the way "there are visual indications on the ground outlining what appears to be the remains of a one time road." Finally, through testimony and photographs, there was ample evidence presented to support a finding that the roadway continues to exist and is visibly apparent. Thus, the easement falls within this exception, and is not barred by the failure to file statutory notice. See 27 V.S.A. §§ 601–606.

■■ Nor do we find merit in defendants' second argument, that the requisite necessity was lost in 1958, the date of the prescriptive easement found by the trial court. A prescriptive easement may only be acquired by hostile and adverse use for the fifteen-year statutory period. *Russell* v. *Pare,* 132 Vt. 397, 405, 321 A.2d 77, 81 (1974). In this case, plaintiff's predecessors acquired a way of necessity in 1943, through their grantor, the common owner. *Clark* v. *Aqua Terra Corp., supra.* Thus, their use of the way was at no time adverse and could not ripen into a prescriptive easement. *Russell* v. *Pare, supra.* Consequently, the element of strict necessity remains.

Having found that plaintiff is entitled to a way of necessity over those lands of defendants Bartholomew which were originally held in common, we have also to decide its duration and scope.

■ As noted above, a way of necessity arises out of public policy concerns that land not be left inaccessible and unproductive. *Howley* v. *Chaffee, supra,* 88 Vt. at 473, 93 A. at 122. Therefore such a way exists only so long as the necessity which creates it: if, at some point in the future access to plaintiff's land over a public way becomes available, the way of necessity will thereupon cease. See *Clark* v. *Aqua Terra Corp., supra,* 133 Vt. at 56–57, 329 A.2d at 668; *Pennock* v. *Goodrich, supra,* 104 Vt. at 140, 157 A. at 924; *Smith* v. *Hig-*

*bee, supra,* 12 Vt. at 122. While this Court has not had occasion to pass on the scope of a way of necessity, we adopt what appears to be the sounder, majority rule on this issue. That is, since the easement is based on social considerations encouraging land use, its scope ought to be sufficient for the dominant owner to have the reasonable enjoyment of his land for all lawful purposes. Contrast *Read* v. *Webster, supra,* 95 Vt. at 247, 113 A. at 818 (an easement by implication is limited to the use which gave rise to it, and can "neither be enlarged because of subsequent necessity nor cut down by a claim that some part of it was not indispensable.").

■■ While the way of necessity is thus expansive, it may not grow to such proportions as to interfere materially with the reasonable uses of the servient estate. Thus, "it would seem to be coextensive with the reasonable needs, present and future, of the dominant estate for such right or easement, and to vary with the necessity, in so far as may be consistent with the full reasonable enjoyment of the servient tenement." *Tong* v. *Feldman,* 152 Md. 398, 405, 136 A. 822, 824 (1927); accord, *Soltis* v. *Miller,* 444 Pa. 357, 282 A.2d 369 (1971); *Davis* v. *Sikes,* 254 Mass. 540, 151 N.E. 291 (1926); *Whittier* v. *Winkley,* 62 N.H. 338 (1882); *Myers* v. *Dunn,* 49 Conn. 71 (1881). See generally, 2 Thompson, *supra,* § 362. We recognize, however, that additional burdens will inevitably be imposed on the servient tenement as a consequence of the open-ended scope of a way of necessity. Therefore, we further hold that the grantee of the dominant estate who thus enlarges the scope of an existing way of necessity must bear those costs to the servient tenement reasonably attributable to such enlargement. These costs, which may include such items as necessary fencing, should be determined by the trial court along with such questions as the width and location of the easement.

It remains to determine the extent of the use of the way, its precise location, and its width. In addition, the court must assess those additional expenses to defendants Bartholomew which are reasonably attributable to the enlarged scope of the way, and charge them to plaintiff. For those purposes we must remand to the trial court. As we have already stated,

the scope of such a way must be coextensive with the reasonable needs, both present and future, of the dominant estate. Such use must be consistent with the full and reasonable enjoyment of the servient estate as well, and must not create unreasonable burdens on the land of the Bartholomews. Simply stated, the trial court must strive for a balancing of interests in fashioning the way, having before it evidence of the intended use of the land of both plaintiff and defendants Bartholomew.

The cause is remanded for determination of the use, location and width of the way, and those costs to be borne by plaintiff, pursuant to the opinions expressed herein.

*Affirmed in part, reversed in part, remanded.*