2003 VT 86A

**Nancy L. Myers v. James J. LaCasse and Marie A. LaCasse**

[838 A.2d 50]

No. 02-052

Present: **Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed October 10, 2003

*Andre D. Bouffard* of *Downs Rachlin Martin PLLC*, Burlington, for Plaintiff-Appellant.

*David Putter*, Montpelier, and *Terrance R. Wolfe*, Bennington, for Defendants-Appellees.

¶ 1. **Dooley, J.** In this foreclosure action, plaintiff Nancy Myers appeals from the decision of the Bennington Superior Court vacating a previous order granting summary judgment in her favor and granting summary judgment for defendants James and Marie LaCasse. Plaintiff argues that the court erred by (1) reopening and vacating the prior summary judgment decision based on arguments not raised in connection with the initial motion for summary judgment, and (2) ruling that a mortgage[1] granted on one of two adjacent parcels several years before common ownership of the two parcels was severed does not have priority over a way of necessity that arose on foreclosure of a junior mortgage. We affirm.

---

[1]Although appellant initially brought this foreclosure action based upon the first and second mortgages held by her — dated July 31, 1987 and January 5, 1990, respectively — she amended her complaint during the course of the proceedings to limit the action to the second mortgage. Accordingly, this opinion concerns only the second mortgage.

¶ 2. The undisputed facts tell a complex and unique story.[2] At different times, in 1987, defendants acquired title to two adjacent parcels of real estate located in Bennington, Vermont. While the southern parcel (Parcel I) had approximately 300 feet of public road frontage, the northern parcel (Parcel II) lacked any such frontage and also had no deeded rights of access to any public road. Defendants proceeded to mortgage Parcel I three times, first to Merchants Bank (Merchants) in 1987, then again to Merchants in 1990, and finally to First Vermont Bank and Trust (First Vermont) later in 1990.

¶ 3. In 1996, defendants defaulted under the terms of the third mortgage, and First Vermont subsequently brought a foreclosure action and obtained a decree of foreclosure. The decree provided that if defendants failed to redeem they would be "forever foreclosed and barred from all equity of redemption in the premises and the plaintiff on such date [would] be entitled to title, possession and ownership of said lands." Defendants also defaulted under the terms of Merchants' first and second mortgages, and Merchants commenced its own foreclosure action. However, Merchants voluntarily dismissed this action and instead took an assignment from First Vermont as to all rights under its decree of foreclosure. When defendants failed to redeem in the First Vermont action, Merchants obtained a certificate of nonredemption and title to the property subject to the first two mortgages which, at that point, Merchants continued to hold as mortgagee. As a result of these events, defendants lost title to Parcel I, and Parcel II became completely landlocked. Defendants did not appeal the decree of foreclosure or the writ of possession issued pursuant to it.

¶ 4. Later in 1996, Merchants quitclaimed Parcel I to Atlantic Bank and Trust Company (Atlantic) and assigned to it the outstanding mortgages on the property. Atlantic sold the parcel to plaintiff in 1998, also assigning to her the first and second mortgages given by defendants to Merchants, together with the related notes. The deed specifically provided that the title in the property would not merge with the mortgages so that the mortgages would remain in effect.

---

[2]In the trial court's opinion Judge Wesley wrote:

> The law's search for justice is always most challenging when the facts prove to be distinctly beyond the ordinary. This case is no simple foreclosure action. The byzantine background established by the circumstances here has guaranteed that the Court's usual resort to prior precedent would provide but dim illumination on facts that elude direct comparison to those associated with previously settled principles.

¶ 5. Plaintiff subsequently filed this foreclosure action based on the second mortgage in order to foreclose any outstanding interests in Parcel I, including any easement by necessity which defendants might claim to have arisen over Parcel I in order to provide access to Parcel II. Defendants raised numerous defenses to foreclosure and counterclaims, including the following:

> 22. In the event LaCasses' legal title to the mortgaged premises is deemed already foreclosed and to have succeeded to plaintiff by virtue of her succeeding to the interests of the other banking institutions mentioned herein, or as a result of judgment in this instant action, defendants submit that an easement or right of way by necessity or implication nevertheless burdens the mortgaged premises and benefits the other 4.6 acre parcel owned by LaCasses. Furthermore, LaCasses submit that this easement is an independent and separate property right and not one which was, or would be, considered a part of the property secured by the Merchant's mortgages, but rather one encumbering it, and therefore not subject to this foreclosure proceeding for any proved breach of Merchants' notes and mortgages.

In its prayer for relief, defendants requested the court to lay out "defendants' recordable rights of access over the mortgaged premises to their other parcel."

¶ 6. After discovery, plaintiff moved for summary judgment pursuant to V.R.C.P. 80.1(c). In an August 4, 2000 opinion, the superior court rejected all of defendants' defenses and granted plaintiff's motion. The court also dismissed defendants' counterclaim on res judicata grounds. Regarding the defense that the claimed way of necessity could not be foreclosed, the court concluded that any way of necessity that may have arisen as a result of the first foreclosure was necessarily junior to the outstanding mortgages and therefore was subject to the present foreclosure. Defendants attempted to take an appeal from this decision, but permission to do so was denied by the trial court because no judgment of foreclosure had yet been entered.

¶ 7. Plaintiff then moved for an accounting, as provided in 80.1(f), and the matter was set for hearing in order to determine the equity of redemption. Prior to the hearing, the superior court — now with a new trial judge presiding — issued an entry order in which it raised sua sponte a number of issues that the court concluded were important but had been left unresolved by the August 4, 2000 order, and requested that

the parties submit further briefing on these issues. In particular, the court was concerned that the method of determining the equity of redemption was still disputed and that the issue of what interest defendants would receive in the event they did redeem remained unresolved. After the parties submitted further briefing, the court held a hearing on the accounting issues. Shortly after, defendants moved to vacate the summary judgment order, and at the same time filed their own motion for summary judgment. Plaintiff opposed the motions both on procedural and substantive grounds.

¶ 8. On August 10, 2001, the court issued an opinion and order granting defendants' motion to vacate as well as their motion for summary judgment. The court concluded that it could review the earlier summary judgment order pursuant to *Morrisseau v. Fayette*, 164 Vt. 358, 363-64, 670 A.2d 820, 824 (1995), and V.R.C.P. 54(b). In granting summary judgment for defendants, the court first concluded that there was no basis to modify the summary judgment decision that the First Vermont foreclosure decree precluded defendants from relitigating issues concluded in that litigation. The court ruled, however, that the first judge had erred in ruling that the claimed way of necessity was junior to the mortgages held by plaintiff, and thus held that the way of necessity was not subject to foreclosure. Plaintiff subsequently filed a motion for reconsideration, which the court denied. This appeal followed.

¶ 9. Plaintiff's first argument on appeal is that the trial court erred by reopening and vacating the prior grant of summary judgment, and doing so on the basis of arguments never raised in connection with the prior grant. Plaintiff contends that allowing the trial court to overstep the bounds of its plenary authority to revise interlocutory orders in this "horizontal appeal" undermines the finality of orders granting summary judgment, encourages judge shopping, and inserts unreasonable delay into the foreclosure process.

¶ 10. Plaintiff acknowledges that the trial court's action violates no explicit command of our procedural rules. Indeed, the grant of a motion for summary judgment by itself is an interlocutory order and not a final judgment. See *Powers v. Hayes*, 170 Vt. 639, 640, 751 A.2d 781, 782 (2000) (mem.). Moreover, in this case, the summary judgment decision was intended to resolve only part of the issues before the court. While it was intended to resolve completely the issues raised in defendants' counterclaim, it did not fully resolve the only claim remaining — plaintiff's foreclosure claim. Thus, it was a partial summary judgment, see *Berlin Dev. Assocs. v. Dep't of Soc. Welfare*, 142 Vt. 107, 112, 453 A.2d 397, 399 (1982), that did not even reach the point where the decision with respect

to plaintiff's complaint was governed by V.R.C.P. 54(b). See *Kelly v. Lord*, 173 Vt. 21, 31-32, 783 A.2d 974, 982-83 (2001) (application of V.R.C.P. 54(b) requires final adjudication of one of multiple claims, not merely resolution of some issues pertaining to a single claim).

■ ¶ 11. The court had the discretion to modify an interlocutory order. See *Dudley v. Snyder*, 140 Vt. 129, 131, 436 A.2d 763, 764-65 (1981); *Brown v. Tatro*, 136 Vt. 409, 411, 392 A.2d 380, 382 (1978) ("[A]n interlocutory order or judgment is left within the plenary power of the court that rendered it to afford such relief as justice requires . . . ."). We find no abuse of that discretion here. Once the court began to confront the ramifications of the summary judgment order on its ability to craft a foreclosure decree, it concluded that the implementation difficulties demonstrated flaws in the summary judgment decision. Thus, we are not dealing with a situation where the court adjudicates all the issues necessary for a final judgment, but without grounds fails to issue that judgment, instead repetitively modifying the preliminary decisions on which the judgment should be based. See *Russell v. Russell*, 157 Vt. 295, 300, 597 A.2d 798, 801 (1991). " '[W]e will not require a judge to perpetuate error or take a more roundabout way to arrive at an ultimately necessary judgment . . . .' " *Morrisseau v. Fayette*, 164 Vt. at 363, 670 A.2d at 824 (quoting *Kelly v. Town of Barnard*, 155 Vt. 296, 307, 583 A.2d 614, 620 (1990)).

¶ 12. Plaintiff argues that the trial judge's reversal of the summary judgment decision was an improper horizontal appeal prohibited by *Economou v. Economou*, 133 Vt. 418, 421-22, 340 A.2d 86, 88 (1975). In *Morrisseau* we overruled *Economou*'s holding that a second judge may not grant a motion for summary judgment after the first trial judge denied an earlier motion. 164 Vt. at 364, 670 A.2d at 824. Plaintiff argues that *Morrisseau* should not apply where the first judge grants summary judgment. We disagree. There is no language in *Morrisseau* that purports to limit the successor judge's reconsideration authority to prior denials of summary judgment as opposed to prior grants thereof. Further, we see no principled reason to distinguish between the two situations, when, as here, the reversal was of a summary judgment decision intended to resolve only part of the issues before the court. The concern that the successor judge should not be "put in error by another judge's ruling," *Morrisseau*, 164 Vt. at 364, 670 A.2d at 824, applies equally to both. See *E. Air Lines, Inc. v. Atl. Richfield Co.*, 712 F.2d 1402, 1405-06 (Temp. Emer. Ct. App. 1983) (no abuse of discretion in a second judge's reversal of a first judge's partial grant of summary judgment,

based on identical federal rule); *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir. 1970) (same).

¶ 13. We also cannot give controlling effect to plaintiff's argument that defendants were allowed to raise new arguments in support of their summary judgment motion after they failed to raise those arguments in response to plaintiff's motion. We do not believe that defendants waived the argument that ultimately persuaded the trial court. In their opposition to plaintiff's motion for summary judgment, they argued that "equity should demand, that in instances of foreclosure, where the result would be landlocked property, a right of way by necessity supersedes the distinction between superior and inferior encumbrances." This is essentially the argument that persuaded the trial court and persuades us, as the next section of this opinion indicates. Defendants did predicate their summary judgment motion in part on a new theory of merger, but the court rejected this theory.

¶ 14. In any event, we would not hold that waiver prevented the trial judge's action even if defendants had not preserved their arguments in their opposition to plaintiff's summary judgment motion. As the following discussion reflects, this is a complicated issue of first impression for this Court. The trial court struggled with the issue, sua sponte raising arguments to which the parties responded. We think that the potential for systemic abuse of the summary judgment process by the trial judge's action is minimal, because "[r]outinely, the trial judge refuses to reconsider refiled motions because of lack of time and discomfort with the role of reversing the decision of a colleague." *State v. Bruno*, 157 Vt. 6, 13, 595 A.2d 272, 276 (1991) (Dooley, J., concurring). On the other hand, accuracy of decisions in difficult cases is promoted when, as in this context, reconsideration of a prior summary judgment decision was necessary to a just and comprehensive resolution of the issues before the court. The interests of justice are thus better served by allowing a second trial judge to reconsider a prior erroneous grant of summary judgment rather than by a "rigid application of the *Economou* rule." *Morrisseau*, 164 Vt. at 364, 670 A.2d at 824; see also *E. Air Lines, Inc.*, 712 F.2d at 1406 ("A determination by a second judge that the former presiding judge made erroneous rulings that will seriously prejudice a party provides a cogent reason to justify vacating the prior order.") (internal quotation marks omitted).

¶ 15. Plaintiff's main argument on appeal is that the trial court erred in granting summary judgment for defendants on the grounds that the 1990 mortgage in this case is junior and inferior to any way of necessity that may have arisen over Parcel I for the benefit of Parcel II. On review of a grant of summary judgment, this Court will apply the same standard as

that used by the trial court. *Sisters & Bros. Inv. Group v. Vt. Nat'l Bank,* 172 Vt. 539, 541, 773 A.2d 264, 267 (2001) (mem.). "[S]ummary judgment is appropriate where the record indicates there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Since the material facts in this case are not in dispute, we are left to decide only whether the trial court's conclusions of law are correct; accordingly, our review is de novo. See *State v. Longe,* 170 Vt. 35, 36, 743 A.2d 569, 570 (1999) (ruling of law by trial court subject to de novo review in this Court).

¶ 16. A way of necessity is "a fiction of law," *Howley v. Chaffee,* 88 Vt. 468, 473, 93 A. 120, 122 (1915), that arises when the division and transfer of commonly owned land results in a parcel left entirely without access to a public road. See *Traders, Inc. v. Bartholomew,* 142 Vt. 486, 492, 459 A.2d 974, 978 (1983). In such a case, "the grantee of the land-locked parcel is entitled to a way of necessity over the remaining lands of the common grantor or his successors in title." *Id.* at 491, 459 A.2d at 978. Thus, "[t]o obtain a way of necessity, one must show that (1) there was a division of commonly owned land, and (2) the division resulted in creating a landlocked parcel." *Okemo Mountain, Inc. v. Town of Ludlow,* 171 Vt. 201, 206, 762 A.2d 1219, 1224 (2000). Our earlier cases described the rationale for the way of necessity as the implementation of the presumed intent of the grantor of the landlocked parcel. See *Tracy v. Atherton,* 35 Vt. 52, 55-56 (1862). Subsequent cases have, however, emphasized the public policy rationale that "no land be left inaccessible for the purposes of cultivation." *Howley,* 88 Vt. at 473, 93 A. at 122; *Traders, Inc.,* 142 Vt. at 491, 459 A.2d at 979 (" 'Its philosophy is that the demands of our society prevent any man-made efforts to hold land in perpetual idleness as would result if it were cut off from all access by being completely surrounded by lands privately owned.' ") (quoting 2 Thompson on Real Property § 362, at 382 (1980)). This shift in emphasis is consistent with the development of the law in other jurisdictions. See J. Simonton, *Ways By Necessity,* 25 Colum. L. Rev. 571, 576-77 (1925). Thus, the new Restatement provision asserts that an easement by necessity

> avoids the costs involved if the property is deprived of rights
> necessary to make it useable, whether the result is that it re-
> mains unused, or that the owner incurs the costs of acquiring
> rights from landowners who are in a position to demand an ex-
> tortionate price because of their monopolistic position.

1 Restatement (Third) of Property (Servitudes) § 2.15 cmt. a (2000).

¶ 17. In this case, it is undisputed that a way of necessity arose over Parcel I for the benefit of Parcel II as a result of First Vermont's strict foreclosure of the third mortgage on Parcel I and defendants' failure to redeem, which eliminated defendants' equitable title in Parcel I and landlocked Parcel II. This is precisely the holding of *Traders, Inc.* See *Traders, Inc.*, 142 Vt. at 492, 459 A.2d at 979.

¶ 18. Plaintiff argues, however, that *Traders, Inc.* does not apply when additional superior mortgages exist and are thereafter foreclosed. In such circumstances, she asserts that the priority of the interests in the land should be determined by the common law rule of "first in time, first in right." See *First Twinstate Bank v. Hart*, 160 Vt. 613, 613, 648 A.2d 820, 821 (1993) (mem.). She notes that this rule is routinely applied to easements that come into existence after a mortgage is given so that foreclosure of the mortgage eliminates the easement. See generally L.S. Tellier, Annotation, *Foreclosure of Mortgage or Trust Deed as Affecting Easement Claimed In, Over, or Under Property*, 46 A.L.R.2d 1197 (1956) (collecting cases). Here, the 1990 mortgage preexists the foreclosure of the third mortgage that created the way of necessity, and, as a result, plaintiff argues, foreclosure of those mortgages should extinguish the way of necessity if defendants do not redeem.

¶ 19. The trial court disagreed, ruling that the claimed way of necessity was not junior to the mortgages held by plaintiff and thus not subject to foreclosure, for three reasons. First, a reservation of easement must be implied in the granting of the 1990 mortgage because "the law must charge the parties with foresight of a potential way of necessity, in the event a foreclosure eventually resulted in a severance of the two parcels." Second, there is a strong public policy against landlocking land. Third, plaintiff was attempting to foreclose on collateral that was not part of the original security agreement.

¶ 20. We agree with the trial court that defendants will continue to have a way of necessity over Parcel I for the benefit of Parcel II in the event that the 1990 mortgage is foreclosed. We believe this result is the necessary consequence of *Traders, Inc.*

¶ 21. This is a case of first impression in Vermont, and apparently elsewhere. Plaintiff argues that we should follow case law from other jurisdictions holding that a preexisting mortgage has priority over a later-created way of necessity and thus extinguishes it through foreclosure. With one exception, however, these cases involve ways of necessity created by the mortgagor's voluntary transfer of unmortgaged land-locked property to third parties. See, e.g., *Bush v. Duff*, 754 P.2d 159, 164 (Wyo. 1988) (easement by necessity extinguished by foreclosure of

mortgage on servient estate granted prior to conveyance that landlocked dominant estate; citing cases), *overruled on other grounds*, *Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287 (Wyo. 1991); *Penn Mut. Life Ins. Co. v. Nelson*, 132 P.2d 979, 981 (Or. 1943) (way of necessity arising after mortgage is granted on servient estate is subject to foreclosure in later action). The holding in these cases protects the mortgagee by ensuring that, upon foreclosure, the mortgagee acquires exactly such title as the mortgagor owned at the time the mortgage was executed, and no less. *Kling v. Ghilarducci*, 121 N.E.2d 752, 757 (Ill. 1954) ("[T]he purchaser at the foreclosure sale acquires the title as it stood at the date of the mortgage."); *Bush*, 754 P.2d at 164 ("A mortgagor is not permitted to create an easement in mortgaged land paramount to the rights of the mortgagee."). In other words, the rule prevents the mortgagor from diminishing the collateral originally given for the loan.

¶ 22. The one exception is *Leonard v. Bailwitz*, 166 A.2d 451 (Conn. 1960), a case essentially identical to *Traders, Inc.* As in *Traders, Inc.*, the lack of access to the landlocked parcel in *Leonard* was caused by the strict foreclosure of the parcel with road access. *Id.* at 454. Unlike *Traders, Inc.*, however, the Connecticut Supreme Court held that the foreclosure did not create a way of necessity for two reasons. *Id.* at 454-55. First, the court explained that when the purchase money mortgage was executed, legal title was conveyed to the mortgagee subject to the mortgagor's right of redemption should the mortgagee foreclose. *Id.* at 454. Consequently, the court held that there was no severance of the parcels at the time of the foreclosure because the mortgagee already had legal title and the foreclosure action merely cut off the mortgagor's right of redemption. *Id.* Second, the court held that irrespective of the conveyance of the fee to the mortgagee, because this was a purchase money mortgage it had priority over claims "arising or attaching through the purchaser mortgagor." *Id.* at 455. This second part of the rationale is essentially the same as that discussed above for situations where the mortgagor voluntarily transfers the landlocked parcel after the mortgage is given.

¶ 23. If we were to accept the purchase money mortgage rationale of *Leonard*, which is plaintiff's position, we would not allow the foreclosure of any mortgage on the parcel with road access to create a way of necessity because in every foreclosure action a mortgagee holds legal title which precedes in time any way of necessity. Accordingly, all mortgagees could argue equally that they were entitled to a security unburdened by the way of necessity because their interest(s) had priority over the foreclosed party's. In *Traders, Inc.*, we declined to follow this reasoning

and held that the mortgagee's interest did not have priority over the foreclosed party's newly created way of necessity — essentially the mortgagee was treated as a purchaser of the property and its preexisting property interest was given no effect. In short, to follow *Leonard* is to overrule *Traders, Inc.*

¶ 24. Although we did not explain our holding in *Traders, Inc.*, as the court attempted in *Leonard*, we think that the considerations discussed by the trial court in this case are paramount. That is, when the mortgagee took its mortgage covering only a part of the mortgagor's adjacent property, it must be charged "with foresight of a potential way of necessity in the event a foreclosure eventually resulted in a severance of the two parcels." The same can be said of the mortgagees in this case. Accordingly, the *Traders, Inc.* rationale requires that we recognize the way of necessity in this case.

¶ 25. We do not view a rationale that is based on the knowledge of the mortgagee when the mortgage was created as inconsistent with the holding of *Traders, Inc.* that a severance occurred by operation of law when the mortgagee foreclosed. Nor do we question the *Traders, Inc.* holding, which is the main point of theoretical disagreement with *Leonard* and is thus central to the decision. We must consider the mortgagees both when the mortgage was given and when the foreclosure action occurred. We reconcile the need to look at both points in time in a case involving mortgage foreclosure in equity, because it is appropriate to look at the knowledge and expectations of the parties. The first mortgagee knew or should have known that under *Traders, Inc.* if the mortgagor defaulted, its foreclosure would have created a way of necessity. This was the necessary consequence of taking a mortgage on the property with road access, while leaving the property without road access unencumbered. It is illogical to increase its rights because of the presence of junior mortgages.

¶ 26. Although our holding follows from the public policy rationale for the way of necessity, it is fully consistent with equitable principles. See *Merchants Bank v. Lambert*, 151 Vt. 204, 206, 559 A.2d 665, 666 (1989) ("[F]oreclosure actions are equitable in nature and therefore it is proper for the court to weigh the equities of the situation."). The "first in time, first in right" rule on which plaintiff relies is, in fact, an equitable maxim that can be subject to other equitable considerations. See *Beeman v. Cooper*, 64 Vt. 305, 307-08, 23 A. 794, 795 (1892). For example, in a very early decision, this Court held that a mortgage securing future advances gave priority to debts arising after those secured by a second mortgage, at least where the second mortgagee does not give notice to the first

mortgagee that it will not be subject to the future debts. See *McDaniels v. Colvin*, 16 Vt. 300, 306 (1844). As another example, we have held that a mortgagee that gives up a superior position over an inferior mortgage by mistake nevertheless retains priority when creating a new, subsequent mortgage. See *Burlington Bldg. & Loan Ass'n v. Cummings*, 111 Vt. 447, 453, 17 A.2d 319, 322 (1941). Here, plaintiff's mortgage interest is subject to a greater equity.

¶ 27. Further, it is entirely consistent with equitable principles to charge the mortgagee with knowledge that the mortgagor has an interest that will become a way of necessity on foreclosure. Equity recognizes both actual and implied, or inquiry, notice. Thus, if a party has "sufficient facts concerning [another's] interest in the property to call upon him to inquire, he is charged with notice of such facts as diligent inquiry would disclose." *Black River Assocs. v. Koehler*, 126 Vt. 394, 399, 233 A.2d 175, 179 (1967); see also *Fed. Land Bank v. Pollender*, 137 Vt. 42, 46, 399 A.2d 512, 515 (1979). Here, defendants' title to the now-landlocked land was of record, and a reasonable inquiry would have shown that its only road access was through the mortgaged property. Indeed, the obligation of the mortgagee to inquire and learn of the potential way of necessity is implied in our decision in *Traders, Inc.* See *William Dahm Realty Corp. v. Cardel*, 16 A.2d 69, 71-72 (N.J. Ch. 1940) (subsequent grantee of land burdened by easement of necessity charged with notice thereof because examination of land records and inspection of area would have revealed landlocked character of land in favor of which easement was implied).

¶ 28. In reaching our holding, we reject plaintiff's position that by sequencing mortgage foreclosures, mortgagees can create, and then extinguish, ways of necessity. If the first mortgagee had foreclosed on its mortgage, it would clearly have created a way of necessity under *Traders, Inc.* As we discussed above, we can think of no reason why it is freed of that way of necessity because the third mortgagee foreclosed first. Again, we emphasize that the primary rationale for the way of necessity is the public policy against having land lay idle because of lack of access. See Simonton, *supra*, 25 Colum. L. Rev. at 602 ("[T]here have been very few cases where the owner of landlocked land has been unable to get an easement by necessity."). Allowing sequencing of mortgage foreclosures alone to defeat the way of necessity wholly undermines this public policy.

¶ 29. We also reject plaintiff's argument that defendants can adequately protect their interests through their right to redeem. If we were to follow plaintiff's logic and hold that the way of necessity creates only an equity of redemption, the right to redeem is of limited value. Defendants cannot redeem their way of necessity without also redeeming the legal

title to the land and paying the outstanding mortgage indebtedness. See Restatement (Third) of Property (Mortgages) § 6.4 cmt. b (1997) ("The mortgagee is not obligated to discharge the mortgage, or to give it up by subrogation, unless it has received payment in full. This includes not only the principal debt, but all legally enforceable additional charges."). Of course, if defendants could pay off the mortgages, they would have done so to retain their legal title to the land, not to protect the way of necessity. In these circumstances, therefore, the right to redeem to protect the way of necessity is illusory.

*Affirmed.*